**TRANSPORT MANUFACTURING & EQUIPMENT COMPANY (a Delaware Corporation) Transferee, Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellee.**

No. 72–1508.

United States Court of Appeals, Eighth Circuit.

Submitted April 9, 1973.

Decided June 15, 1973.

Rehearing Denied Aug. 10, 1973.

Guy A. Magruder, Jr., Kansas City, Mo., for appellant.

Donald H. Olson, Atty., Tax Div., Dept. of Justice, Washington, D. C., for appellee.

Before LAY and STEPHENSON, Circuit Judges, and TALBOT SMITH,* Senior District Judge.

LAY, Circuit Judge.

This appeal relating to a 1960 jeopardy assessment filed against the Transport Manufacturing & Equipment Company of Delaware (TM&E) reaches our court for the third time. Originally the taxpayer sought relief to compel the Commissioner to abate the jeopardy assessment upon tender of the balance due under the deficiency assessment.[1] The tender did not include any post-assessment interest, and the Commissioner refused to withdraw the assessment. The district court dismissed this action, and we affirmed for lack of jurisdiction under Section 7421 of the 1954 Code. Transport Manufacturing & Equipment Co. of Del. v. Trainor, 382 F.2d 793 (8 Cir. 1967). Thereafter, the Tax Court in a Rule 50 computation determined, inter alia, that TM&E was liable for post-assessment interest from September 30, 1960, on the unabated portion of the jeopardy assessment. 27 TCM 919 (1968). On appeal we reversed that decision and remanded the case for recomputation of deficiencies excluding any consideration of post-assessment interest; we held that the Tax Court lacked jurisdiction to determine any liabilities subsequent to the date of the jeopardy assessment. Transport Manufacturing & Equipment Co. v. C. I.R., 434 F.2d 373 (8 Cir. 1970). On remand the Tax Court, the Honorable Bruce M. Forrester presiding, filed a supplemental opinion and decision. 31 TCM 262 (1972). This appeal is now brought questioning the overall determination of the taxpayer's transferee liability.

On appeal TM&E challenges: (1) the Tax Court's failure to determine that certain payments which the government credited to post-assessment interest are overpayments; (2) its transferee liability for post-assessment interest;[2] (3) the validity of the September 14, 1960 jeopardy assessment of transferee liability; and (4) the findings of the Tax Court that TM&E is liable for jeopardy interest assessed against it on September 14, 1960. We affirm.

The unfortunate history of this litigation reaches backward almost a quarter of a century in time. Deficiencies and penalties totaling $2,364,493.95 were first determined by the Commissioner on April 17, 1958, due and owing from Transport Manufacturing & Equipment Company of Illinois for the years 1949–1953. On February 8, 1957, TM&E of Delaware had succeeded to the assets, subject to the liabilities, of TM&E-Illinois. On July 11, 1958, TM&E (Del.) filed its petition with the Tax Court for redetermination of its transferee liability. Subsequently, the Commissioner issued a jeopardy assessment on September 14, 1960, against the taxpayer. On October 2, 1961, prior to the trial on the tax deficiencies, the parties entered into a stipulation which read in part as follows:

"(16). T.M.&E. of Delaware, petitioner in Docket No. 74952, is liable as transferee of the assets of T.M.&E. of Illinois for any deficiencies in income taxes and additions to the tax, plus interest thereon as provided by law, which may be found by this Court to be due and owing from the said T.M.&E. of Illinois, petitioner in Docket No. 74953, for the taxable years 1949 to 1953, inclusive."

* The Honorable Talbot Smith, Senior United States District Judge, Eastern District of Michigan, sitting by designation.

1. The amount of the jeopardy assessment was $3,301,998.11. The amount tendered was $1,986,163.82.

2. Although the transferor's tax liability was determined under the 1939 Code, taxpayer asserts that the jeopardy assessment against taxpayer as a transferee was under the 1954 Code which no longer assesses compound interest. 26 U.S.C. § 6601(f)(2).

The Tax Court rendered its opinion on July 14, 1964. 23 TCM 1113. A Rule 50 computation was not completed, due to objections being filed, until December 5, 1968. 27 TCM 919 (opinion of August 29, 1968, supporting computation). By this time TM&E had made payments on its transferee liability approximating $1,655,000. On appeal to this court, as indicated, we remanded the case back to the Tax Court for recomputation excluding post-assessment interest. On remand the liability of the transferor for tax deficiencies, penalties and assessed interest was determined to be $890,-927.64. 31 TCM 262 (1972).

## CREDIT FOR OVERPAYMENT

It is undisputed that TM&E has paid $1,655,836.45 since the statutory notice of April 17, 1958, to be applied against its transferee liability. 31 TCM at 265. The Tax Court, however, reflected payment of only $1,289,217.25 in its Rule 50 computation. The issue raised here relates only to $220,426.09 out of the original accounting differential of $366,-619.20. The parties agree that the $220,426.09 was not determined to be an overpayment by the Tax Court since the Commissioner had previously credited that amount to post-assessment interest, and the Tax Court decided that it therefore had no jurisdiction over the matter.[3]

According to the procedures set up by the Commissioner, when a taxpayer makes advance payments, credits are applied to the asserted deficiency and to interest thereon as designated by the taxpayer. Rev.Proc. 64–13, 1964–1 Cum. Bull. (Part I) 674 (Sec. 3.01). As the Commissioner urges, when no designation has been made by the taxpayer such payments are applied to taxes, penalties and interest, in that order, beginning with outstanding liabilities for the earliest year and then each subsequent year. Rev.Proc. 58–239, 1958–1 Cum.Bull. 94. The parties did stipulate that at least part of the amount in question was actually credited to post-assessment interest. The government contends that since the Tax Court did not have jurisdiction to determine matters relating to post-assessment interest, it, therefore, could not consider payments credited by the Commissioner to such accrued interest. Although TM&E may not have acquiesced in such a division of payments, it made no effort to designate its preferred allocation.

As taxpayer recognizes, the post-assessment interest issue relates solely to the Commissioner's accounting procedure. Even if we agreed that the Tax Court exceeded its statutory authority by not computing all of TM&E's payments as overpayments, upon final decision the Commissioner could still credit the overpayments to the claimed post-assessment interest, effecting the same result. 26 U.S.C. § 6402. The law needs to be precise, but it should not travel in circles. It is mutually accepted by the parties that neither the Tax Court nor this court has the power to order any refund. United States ex rel. Girard Trust Co. v. Helvering, 301 U.S. 540, 542, 57 S.Ct. 855, 81 L.Ed. 1272 (1937); Empire Ordnance Corporation v. Harrington, 102 U.S.App.D.C. 14, 249 F.2d 680, 682

---

3. Counsel for the Commissioner explains this when at the Tax Court hearing he observed:

"MR. BOYER: These are payments that the respondent has applied to post assessment interest.

"Since petitioner has not directed to the respondent, at the time these payments were made, that they be applied in any particular manner, we believe that the respondent has properly applied payments by first applying them towards petitioner's liability as transferee for deficiencies and assessed interest and then, secondly, applying the additional payments to his liability for post assessment interest.

"Secondly, we believe that the Eighth Circuit Opinion has removed from the jurisdiction of this Court the right to determine what should be done with these payments that have been applied to post assessment interest. Under the law of this case, this Court does not have any jurisdiction to make any determination with respect to the petitioner's liability for or overpayment of, post assessment interest."

(1957); see also 26 U.S.C. § 6512. No substantive prejudice to taxpayer can arise from the Tax Court's determination. Under the circumstances we decline to disturb the Tax Court's holding.

## POST-ASSESSMENT INTEREST

On this appeal we are asked to pass upon the validity of taxpayer's claim that no post-assessment interest is due since the jeopardy assessment was made under the 1954 Code which now prohibits post-assessment interest. 26 U.S.C. § 6601(f)(2). TM&E also urges that the September 14, 1960, jeopardy assessment filed against it is invalid because it did not receive proper notice of transferee liability at the time of the assessment. This issue was never raised in the Tax Court until the remand of our prior opinion. The Tax Court passed on the question over the Commissioner's objection. 31 TCM at 264. We further note that taxpayer has paid its transferee liability in full. The only possible consequence of this belated contention is to attack again the taxpayer's liability relating to post-assessment interest.[4]

■ These issues are not before us, since, as we have previously held, the Tax Court lacked jurisdiction to pass on post-assessment interest. Our jurisdiction is limited on appeal only to those questions properly before the Tax Court. Cf. Lessmann v. C.I.R., 327 F.2d 990, 996 (8 Cir. 1964); National Contracting Co. v. Commissioner, 105 F.2d 488, 494 (8 Cir. 1939); 9 Mertens, Law of Federal Income Taxation § 51.26.

## TRANSFEREE LIABILITY FOR INTEREST

In the Tax Court TM&E claimed that the stipulation relating to transferee liability, as earlier set forth, precluded any liability for post-assessment interest. Since this issue is now removed from the case, taxpayer now argues that the stipulation also bars the Commissioner's claim for jeopardy assessed interest.

Taxpayer also contends that the Commissioner failed to prove any factual basis supporting his claim for jeopardy assessed interest and that liability for interest on the transferor's deficiencies should have been determined by state law. We reject each of these claims.

The Tax Court originally found that the stipulation contains no words of limitation and does not bar liability for jeopardy assessed interest. 27 TCM at 921. As the Tax Court discovered, no words of limitation are evident within the stipulation, and the legitimate and prevailing purpose of the stipulation was to relieve the Commissioner of his burden of tracing assets from transferor to transferee; moreover, this stipulation was entered into in another related proceeding a full year after the jeopardy assessment.

TM&E cites Morse Boulger Destructor Co. v. Camden Fibre Mills, 239 F.2d 382 (3 Cir. 1956), for the proposition that when the parties have stipulated the amount of total liability, it is error to add interest. It also refers to Ursich v. da Rosa, 328 F.2d 794 (9 Cir. 1964), cert. denied, 379 U.S. 920, 85 S.Ct. 273, 13 L.Ed.2d 334, and United States v. Certain Land in City of St. Louis, 58 F. Supp. 305 (E.D.Mo.1944), where interest was denied even though it would have been awarded in absence of the stipulation. However, all of these cases involve stipulations that were intended to compromise one party's underlying liability. Here the stipulation was not a compromise of liability. Furthermore, the cases of Morse Boulger Destructor Co. v. Camden Fibre Mills and United States v. Certain Land in City of St. Louis contained, stipulations where the *exact* amount of liability was expressed in the stipulation. In Ursich v. da Rosa interest was considered after the parties had agreed to a stipulation which did not mention it, the defendant then refused its late inclusion, and the plaintiff did not seek to reopen the stipulation. Thus these cases are clearly distinguishable.

---

4. Furthermore, in oral argument counsel TM&E admitted that it received adequate notice of transferee liability.

■ We agree with the Tax Court's reasoning and hold its finding not to be clearly erroneous.

## VALIDITY OF THE ASSESSMENT

■■ TM&E also attacks the government's failure to prove that the 1960 jeopardy assessed liability was valid or to prove the extent thereof. This assessment was made on September 14, 1960; it was not until 1971 that taxpayer sought in the Rule 50 proceeding to dispute the assessment.[5] We think this is a frivolous claim. We find, as did the Tax Court, the stipulation effectively precludes taxpayer's argument.

## STATE LAW

■ We turn to taxpayer's final argument that state law governs the determination of liability for the assessed interest. This argument on appeal has also been extended beyond its original boundaries. Initially the only attack made in the Tax Court related to the validity of the assessment as it related to post-assessment interest; nevertheless, we find the reasoning of the Tax Court in 1968 dispositive as to the issue of jeopardy assessed interest as well. Judge Forrester wrote:

"In the instant case section 297 specifically provides that the individual who is jeopardy assessed and fails to pay the assessment within ten days is to pay interest at the rate of 6 percent on the unpaid balance from the date of notice. There is no gap in the federal law as to liability for interest for one validly assessed. As pointed out in Patterson v. Sims, 281 F.2d 577, 580 (C.A. 5, 1960) (involving a similar provision under section 294 of the 1939 Code), where the federal statute has spoken, there is no need to look to state law.

\* \* \* \* \* \*

"Of course the maximum amount to which the interest applies is that amount which under state statutes subjects transferee petitioner to transferee liability. But in the instant case, the parties have stipulated that transferee petitioner's liability is at least equal to the amount which was jeopardy assessed by respondent.

" . . . It is extraneous to this determination to discuss the issue of the exact value of the transferee assets and we refrain from doing so. For similar reason we do not interpret the laws of Illinois and Missouri regarding interest." 27 TCM at 922.

See also Estate of Samuel Stein v. C.I.R., 37 T.C. 945, 961 (1962); Lowy v. C.I.R., 35 T.C. 393 (1960); 9 Mertens, Law of Federal Income Taxation § 53.38; cf. Bos Lines, Inc. v. C.I.R., 354 F.2d 830, 840 (8 Cir. 1965).

Judgment of the Tax Court is affirmed.

5. Taxpayer is well aware that Rule 50(c) precludes consideration of new substantive issues. Bankers Pocahontas Coal Co. v. Burnet, 287 U.S. 308, 312–313, 53 S.Ct. 150, 77 L.Ed. 325 (1932); Vogel's Estate v. C.I.R., 278 F.2d 548, 550 (9 Cir. 1960); Commissioner v. Sussman, 102 F. 2d 919, 922 (2 Cir. 1939); cf. Estate of Samuel Stein v. C.I.R., 40 T.C. 275 (1963).

TM&E attempts to rely on this rule to prevent the Tax Court's consideration of assessed interest. It urges that its belated argument is made because it did not know that the Tax Court was going to assess interest until it received the original Rule 50 decision computing the taxpayer's liability. However, TM&E was well aware that both § 6861(c) of the 1954 Code and § 273(c) of the 1939 Code gave the Tax Court jurisdiction to determine "all amounts assessed." See 27 TCM at 920. And as has been stated, taxpayer has known of the assessment of interest since 1960.