**LUTHERAN SOCIAL SERVICE OF MINNESOTA, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

Civ. No. 4–83–37.

United States District Court, D. Minnesota, Fourth Division.

April 3, 1984.

Arthur L. Doten and Hubert V. Forcier, Faegre & Benson, Minneapolis, Minn., for plaintiff.

James M. Rosenbaum, U.S. Atty., and Donald F. Paar, Asst. U.S. Atty., Minneapolis, Minn., and Frank Gokey, Trial Atty., Tax Div., Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

This matter is before the Court on the parties' cross motions for summary judgment. The issue presented is whether the plaintiff, a church-affiliated, tax-exempt organization, is exempt from filing annual informational tax returns pursuant to 26 U.S.C. § 6033.

## FACTS

The plaintiff, Lutheran Social Service of Minnesota, is a separately incorporated, non-profit social service agency that is affiliated with the various synods of the Lutheran Church. The plaintiff is operated by a board of directors elected by the Minnesota representatives of the three major national Lutheran bodies: the American Lutheran Church, the Lutheran Church in America, and the Lutheran Church—Missouri Synod. It is a separate corporation from these bodies. The plaintiff charges fees for its services according to its clients' ability to pay. In addition, approximately 65 percent of the plaintiff's operating budget is derived from federal, state, and county funds.

The services the plaintiff provides include child care and adoption services, family and individual counseling services, residential treatment services for the emotionally disturbed, residential treatment services for mentally retarded adolescents and mentally retarded adults, residential treatment services involving a community based correctional program for young male felons, a nutrition program for the aging, a camp for mentally and physically impaired individuals, community counseling programs, resettlement programs, and a chaplaincy program. Plaintiff's Response to Request for Admissions, Response 5.

With the exception of the chaplaincy program, a relatively small portion of the plaintiff's activities, the defendant contends that the plaintiff's services are secular in nature. The plaintiff, in contrast, maintains that the services are religious in that they are "religiously motivated, manifestations of religious belief, forms of worship, and means of propagation of the Christian faith, according to the tenets and practices of the Lutheran Churches by which [the plaintiff] is owned and con-

trolled." Plaintiff's First Responsive Brief at 1. The plaintiff admits, however, that many of its services would be secular in nature if performed by secular organizations. *Id.; see* Plaintiff's Response to Request for Admissions, Response 7.

In this action, the plaintiff seeks a refund of a $700 late filing penalty imposed by the Internal Revenue Service (IRS). As an organization exempt from taxation under 26 U.S.C. § 501(a), the plaintiff filed a Form 990 (Return of Organization Exempt from Income Tax) with the IRS on July 24, 1979 for the tax year 1978. Since the form had been due two months earlier, the IRS assessed a $700 late filing penalty pursuant to 26 U.S.C. § 6652(d). After paying the penalty, the plaintiff filed a claim for a refund arguing that it was exempt from the filing requirement pursuant to 26 U.S.C. § 6033(a)(2)(A)(i). The IRS initially allowed the refund, but later reassessed the same penalty and thereafter denied the plaintiff's second claim for a refund, thereby giving rise to this lawsuit.

## DISCUSSION

The statute at issue in this case, 26 U.S.C. § 6033, provides:

**(a) Organizations required to file.—**

**(1) In general.**—Except as provided in paragraph (2), every organization exempt from taxation under section 501(a) shall file an annual return, stating specifically the items of gross income, receipts, and disbursements, and such other information for the purpose of carrying out the internal revenue laws as the Secretary may by forms or regulations prescribe

. . . .

Section 6033(a)(2) excepts certain types of organizations from this filing requirement:

**(2) Exceptions from filing.—**

(A) **Mandatory exceptions.**—Paragraph (1) shall not apply to—

(i) *churches, their integrated auxiliaries, and conventions or associations of churches,*

(ii) any organization (other than a private foundation, as defined in section 509(a)) described in subparagraph (C), the gross receipts of which in each taxable year are normally not more than $5,000, or

(iii) the exclusively religious activities of any religious order.

(Emphasis added.)[1] In addition, organizations that are not separately incorporated from the churches with which they are affiliated are exempt under the mandatory exception for churches. Treas.Reg. § 1.6033–2(g)(5)(iv), example 6; *cf. St. Martin Evangelical Lutheran Church v. South Dakota,* 451 U.S. 772, 784, 101 S.Ct. 2142, 2149, 68 L.Ed.2d 612 (1981) (church-affiliated schools that have no separate legal existence from church are exempt from Federal Unemployment Tax Act).

The plaintiff has mounted a three-pronged attack on the defendant's refusal to grant the plaintiff exempt status under section 6033(a)(2)(A)(i). First, it maintains that it is a church or a convention or association of churches as those terms are defined by the defendant. Second, while conceding that it is not an "integrated auxiliary" of a church as that term is defined, the plaintiff contends that the Treasury Regulation defining "integrated auxiliary" is invalid because it includes an "exclusively religious" purpose test not contained in the statute. *See* Treas.Reg. § 1.6033–2(g)(5). Finally, the plaintiff argues that, even if the regulation is consistent with the statute, it is nevertheless unconstitutional on equal protection and first amendment grounds. The defendant denies each of

---

**1.** Prior to 1969, section 6033 provided an exemption from the requirement of filing informational tax returns to all 501(c)(3) [*i.e.,* tax exempt] religious organizations and to all 501(c)(3) organizations that had some substantial connection to a 501(c)(3) religious organization. Congress amended section 6033 in 1969, narrowing the exemption to its present form.

The 1969 amendment reflected a legislative conclusion that "more information is needed on a more current basis from more organizations and that this information should be made more readily available to the public, including state officials." Joint Committee on Internal Revenue Taxation, General Explanation of Tax Reform Act of 1969, 91st Cong., 52–53 (1970).

these contentions and further maintains that the Court lacks jurisdiction to hear the plaintiff's latter two arguments since the plaintiff did not raise them at the administrative level.

### A. Is the Plaintiff a Church or a Convention or Association of Churches?

■ The plaintiff first contends that it is entitled to the exemption because it is a church or a convention or association of churches as those terms are defined.[2] The Court does not agree.

Section 6033 does not define "church." However, "church" is defined in Treasury Regulation § 1.511–2(a)(3)(ii), a regulation that defines which organizations are exempt from the tax on unrelated business income. That regulation provides:

> The term "church" includes a religious order or a religious organization if such order or organization *(a) is an integral part of a church, and (b) is engaged in carrying out the functions of a church, whether as a civil law corporation or otherwise.* In determining whether a religious order or organization is an integral part of a church, consideration will be given to the degree to which it is connected with, and controlled by, such church. *A religious order or organization shall be considered to be engaged in carrying out the functions of a church if its duties include the ministration of sacerdotal functions and the conduct of religious worship....* What constitutes the conduct of religious worship or the ministration of sacerdotal functions depends on the tenets and prac-

tices of a particular religious body constituting a church. (Emphasis added.)

■ The plaintiff claims that it meets this definition of "church" because it is owned and controlled by churches and because, according to Lutheran tenets, its activities are a form of worship and a means of propagating the Christian faith. The defendant does not deny that the plaintiff is an integral part of the Lutheran Church. Rather, the defendant focuses on the second part of the test—whether the plaintiff is carrying out the functions of a church. The defendant contends that the plaintiff's primary activities are secular and that the plaintiff's motivation for performing them cannot transform those activities into religious functions.

The defendant's argument finds support in *De La Salle Institute v. United States*, 195 F.Supp. 891 (N.D.Cal.1961). *De La Salle* held that the Christian Brothers Order of the Catholic Church, which operated separately incorporated parochial schools and a winery, was not exempt from the tax on unrelated business income. The Christian Brothers Order had argued that its schools were churches because, under Catholic doctrine, religious teaching is a church function. The court rejected that argument stating:

> The tenets of the Church cannot broaden the statutory exemption. What is a "church" for purposes of the statute must be interpreted in the light of the common understanding of the word.

195 F.Supp. at 903.[3]

Under this approach, the plaintiff cannot be considered a church (or a convention or

---

**2.** Section 6033 exempts both churches and conventions or associations of churches in order to give equal tax treatment both to hierarchical churches such as the Catholic Church and to congregational churches such as the Baptists in which each local congregation is autonomous. *See* Whelan, *"Church" in the Internal Revenue Code: The Definitional Problems,* 45 Fordham L.Rev. 885, 903 (1977).

**3.** In *St. Martin Evangelical Lutheran Church v. South Dakota*, 451 U.S. 772, 101 S.Ct. 2142, 68 L.Ed.2d 612 (1981), the United States Supreme Court recently refused to either endorse or re-

ject this approach. 451 U.S. at 784 n. 15, 101 S.Ct. at 2149 n. 15.

*St. Martin* did not impliedly overrule *De La Salle* as the plaintiff contends. *St. Martin* held that church-affiliated schools that are not separately incorporated from a church are exempt from the Federal Unemployment Tax Act. 451 U.S. at 784, 101 S.Ct. at 2149. The Court specifically did not address the issue involved in *De La Salle,* whether a separately incorporated, church-affiliated school would be entitled to a similar exemption. 451 U.S. at 782 n. 12, 101 S.Ct. at 2148 n. 12.

association of churches) as that term is commonly understood. The plaintiff's primary activity consists of providing a wide variety of social services to the public at large—services that the plaintiff concedes are secular in nature when performed by secular organizations. These services cannot be considered the ministration of sacerdotal functions. There is also no evidence in the record that the plaintiff holds worship services. It should be noted that the plaintiff's services are available to persons of any and all religious beliefs, and the plaintiff's counselors are not required to counsel with any particular religious orientation. For these reasons, the plaintiff's argument that it is a church or a convention or association of churches must be rejected.[4]

## B. Is the Plaintiff an "Integrated Auxiliary of a Church" as that Term is Defined?

 Section 6033 also provides an exemption from the filing requirement to "integrated auxiliaries" of a church. In its final regulations implementing section 6033, promulgated in 1977, the Treasury Department defined "integrated auxiliary" as follows:

(5)(i) For purposes of this title, the term "integrated auxiliary of a church" means an organization:

(*a*) Which is exempt from taxation as an organization described in section 501(c)(3);

(*b*) Which is affiliated (within the meaning of paragraph (g)(5)(iii) of this section) with a church; and

(*c*) *Whose principal activity is exclusively religious.*

Treas.Reg. § 1.6033–2(g)(5)(i) (emphasis added). There is no dispute that the plaintiff satisfies the first two requirements. However, the IRS has denied the plaintiff exempt status based on the third factor, contending that the plaintiff's principal ac-

tivity is not exclusively religious. The Treasury Regulation defines "exclusively religious" in the following manner:

(ii) An organization's principal activity will not be considered to be exclusively religious if that activity is educational, literary, charitable, or of another nature (other than religious) that would serve as a basis for exemption under section 501(c)(3).

Treas.Reg. § 1.6033–2(g)(5)(ii).

The plaintiff does not attempt to argue that its principal activities are exclusively religious. Such an argument would have to be rejected. Clearly, many of the plaintiff's functions are charitable such that they "would serve as a basis for exemption under section 501(c)(3)." Thus, the plaintiff is not an integrated auxiliary of a church as the Treasury Department has defined that term. The remaining question is whether the Treasury's definition is valid.

## C. Is the Treasury Department's Definition of "Integrated Auxiliary of a Church" Valid?

The plaintiff contends that the inclusion of an "exclusively religious" test in the definition of "integrated auxiliary of a church" is invalid because it is contrary to the statute and to legislative intent, and because it is unconstitutional on equal protection and first amendment grounds. The defendant maintains that the "exclusively religious" test is valid. A threshold question is whether the Court has jurisdiction to hear these statutory and constitutional arguments since the plaintiff failed to raise them at the administrative level.

### 1. Jurisdiction.

 Section 7422(a) of the Internal Revenue Code requires a person seeking a refund of taxes paid to file a claim with the IRS before bringing an action in court. Such an administrative filing is a jurisdic-

---

**4.** The plaintiff has also suggested that it may qualify for the exemption as an "interchurch organization of local units of a church" pursuant to Treasury Regulation § 1.6033–2(g)(1)(i).

The plaintiff does not qualify for the exemption under this provision as there is no evidence that the plaintiff comprises local units of a church.

tional prerequisite to a court action. *E.g., Shanker v. United States,* 571 F.2d 8, 10 (8th Cir.1978). Moreover, Treasury Regulation § 301.6402–2(b) requires that the claim for a refund "set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof." The purpose of the rule is to give the Commissioner adequate notice of the taxpayer's claims and an opportunity to correct errors and thereby limit the scope of contested issues. *Union Pacific R.R. v. United States,* 389 F.2d 437, 442, 182 Ct.Cl. 103 (1968). Several courts have held that claims which "vary substantially" from those contained in the claim for refund cannot be brought in a court proceeding, absent a waiver by the government. *E.g., Mallette Bros. Construc. Co. v. United States,* 695 F.2d 145, 155 (5th Cir.), *cert. denied,* — U.S. ——, 104 S.Ct. 341, 78 L.Ed.2d 309 (1983); *Cook v. United States,* 599 F.2d 400, 406, 220 Ct.Cl. 76 (1979).

■ In its two claims for refund, the plaintiff in this case argued only that it was a church, an integrated auxiliary of a church, or a convention or association of churches. It did not argue that the Treasury Regulation was invalid or unconstitutional. It did not object to the inclusion of an "exclusively religious" test in the definition of "integrated auxiliary." The government contends that the plaintiff's new arguments vary substantially from its claims at the administrative level, and refuses to waive the filing requirement as to those new arguments.

While it is true that the plaintiff did not explicitly raise its statutory and constitutional arguments at the administrative level, the Court agrees with the plaintiff that those arguments were implicit in the plaintiff's position that it was entitled to exempt status as an "integrated auxiliary of a church." Refund claims should not be strictly construed, *National Forge & Ordnance Co. v. United States,* 151 F.Supp. 937, 941, 139 Ct.Cl. 204 (1957), and the taxpayer need only set forth information sufficient to enable the IRS to make an

intelligent review of the claim, *Gada v. United States,* 460 F.Supp. 859, 869 n. 5 (D.Conn.1978). Here, the plaintiff's claim that it is an integrated auxiliary of a church was sufficient information to trigger an intelligent IRS review not only of whether the plaintiff fell within the definition of "integrated auxiliary," but also of whether that definition is statutorily and constitutionally permissible. Accordingly, the Court finds that jurisdiction exists.

**2. Consistency with the statute.**

The plaintiff's first challenge to the defendant's definition of "integrated auxiliary" is that the inclusion of an "exclusively religious" test is contrary to section 6033(a)(2)(A)(i) of the Internal Revenue Code. Section 6033(a)(2)(A)(i) does not contain an "exclusively religious" test but merely states that "churches, their integrated auxiliaries, and conventions or associations of churches" are exempt from the requirement of filing informational tax returns. The plaintiff argues that there is nothing in the legislative history of section 6033 to support the inclusion of an "exclusively religious" test, and in fact, that the legislative history is to the contrary.

■ In response, the defendant correctly points out that courts must defer to Treasury Regulations that " 'implement the congressional mandate *in some reasonable manner,*' " *Commissioner v. Portland Cement Co.,* 450 U.S. 156, 169, 101 S.Ct. 1037, 1045, 67 L.Ed.2d 140 (1981), *quoting United States v. Correll,* 389 U.S. 299, 307, 88 S.Ct. 445, 449, 19 L.Ed.2d 537 (1967) (emphasis added). Phrased conversely, Treasury Regulations " 'must be sustained unless unreasonable and *plainly inconsistent with the revenue statutes.*' " 450 U.S. at 169, 101 S.Ct. at 1045, *quoting Commissioner v. South Texas Lumber Co.,* 333 U.S. 496, 501, 68 S.Ct. 695, 698, 92 L.Ed. 831 (1948) (emphasis added). Under this deferential standard, the defendant insists that Treasury Regulation § 1.6033–2(g)(5) is not "plainly inconsistent" with the statute. In fact, the defendant argues that

Congress has since endorsed the distinctions which that regulation drew.

▮▮▮▮ The plaintiff's main argument that the regulation is invalid is based on section 6033's legislative history. The Senate Report, in discussing exempt organizations, stated:

Among the auxiliary organizations to which this exemption applies are the mission societies and the church's religious schools, youth groups, and men's and women's organizations, and interchurch organizations of local units qualifying as local auxiliaries.

S.Rep. No. 552, 91st Cong., 1st Sess. 52, *reprinted in* 1969 U.S.Code Cong. & Ad. News 2027, 2080. The Conference Committee Report similarly stated:

The integrated auxiliary organizations to which this applies include the church's religious school, youth group, and men's and women's clubs.

H.R.Rep. No. 782, 91st Cong., 1st Sess. 286, *reprinted in* 1969 U.S.Code Cong. & Ad.News 2392, 2400. The Treasury Regulation follows through on this legislative history by providing:

Organizations which are integrated auxiliaries include a men's or women's organization, a religious school (such as a seminary), a mission society, or a youth group.

Treas.Reg. § 1.6033–2(g)(5)(iv). The plaintiff argues that the types of organizations that are expressly exempted are no more "exclusively religious" in their activities than it is, and that by providing an exemption for such groups, Congress could not have intended that an "exclusively religious" test be applied to integrated auxiliaries.

The plaintiff's argument is undercut by a subsequent piece of legislative history. In the Tax Reform Act of 1976, Congress again used the term "integrated auxiliary of a church" in a statute dealing with lobbying by charities. *See* 26 U.S.C. § 501(h). The House Ways and Means Committee Report on that act, prepared after the Trea-

sury Department had proposed the regulations at issue here, states:

Because proposed regulations have recently been published regarding the meaning of the term "integrated auxiliary" and because that term is used in this bill, your committee wishes to make it clear—in agreement with the conclusions of the proposed regulations—that *theological seminaries, religious youth organizations, and men's fellowship associations which are associated with churches would generally constitute integrated auxiliaries.* Your committee also intends (in agreement with the conclusions in the proposed regulations) that *hospitals, elementary grade schools, orphanages, and old-age homes are organizations which frequently are established without regard to church relationships and are to be treated for these purposes the same as corresponding secular charitable, etc., organizations; that is, such entities are not to be regarded as "integrated auxiliaries."*

H.R.Rep. No. 1210, 94th Cong., 2d Sess. 15–16. (Emphasis added.) Clearly, the House Committee would expressly exclude social welfare organizations such as the plaintiff from the definition of "integrated auxiliary" while expressly including the other types of organizations listed. This is precisely the result achieved by the regulation challenged in this case.

On the other hand, the plaintiff points out that, due to skillful lobbying by the churches, the House Report was not adopted by the Conference Committee. Rather, the Conference Committee took "no position" on the House Report's language. H.R.Rep. No. 1515, 94th Cong., 2d Sess. 533, *reprinted in* 1976 U.S.Code Cong. & Ad.News 4118, 4230. In addition, the Senate Report does not discuss the meaning of the term "integrated auxiliary." *See* S.Rep. No. 938, 94th Cong., 2d Sess., pt. 2, at 79, *reprinted in* 1976 U.S.Code Cong. & Ad.News 4030, 4104. As one commentator has observed:

Thus the matter came to a draw. The churches were not successful in their efforts to persuade the conference commit-

tee to repudiate the proposed regulation on "integrated auxiliaries," and the Internal Revenue Service and other parties interested in a restrictive definition were not successful in their efforts to secure a legislative history for the Tax Reform Act of 1976 that would firmly support the proposed regulation.

Whelan, *"Church" in the Internal Revenue Code: The Definitional Problems*, 45 Fordham L.Rev. 885, 921 (1977).

At best, then, the legislative history is inconclusive. The House Report evinces a legislative intent to deny the exemption to organizations such as the plaintiff, while the Senate and Conference Committee Reports neither confirm nor disavow such an intent. Given this ambiguity, the Court finds that Treasury Regulation § 1.6033–2(g)(5) is not "plainly inconsistent" with the statute or the legislative history. *See Commissioner v. Portland Cement Co.,* 450 U.S. 156, 169, 101 S.Ct. 1037, 1045, 67 L.Ed.2d 140 (1981). While the inclusion of an "exclusively religious" test was no doubt designed to make the exemption afforded to "integrated auxiliaries of a church" as narrow as possible, that result is consistent with Congress' purpose in amending section 6033 in 1969 which was to increase the number of organizations required to file informational tax returns. *See* note 1 *supra.*

The plaintiff's other argument is that Congress' explicit inclusion in section 6033(a)(2)(A)(iii) of an "exclusively religious" test for religious orders shows that Congress did not intend that such a test be applied to integrated auxiliaries.[5] This argument is unpersuasive. As the preceding discussion of the legislative history has shown, Congress' intent in this regard is uncertain. However, nothing in the language of section 6033 precludes application

of an exclusively religious test to integrated auxiliaries. Therefore, the regulation is again not "plainly inconsistent" with the statute.

Accordingly, the Court rejects the plaintiff's argument that Treasury Regulation § 1.6033–2(g)(5) is invalid because it is inconsistent with the statute.

### 3. Constitutional challenges.

#### a. Due process.

■ The plaintiff's first constitutional argument is that, because Treasury Regulation § 1.6033–2(g) requires separately incorporated, church-affiliated organizations such as the plaintiff to file informational returns but exempts church-affiliated organizations that are not separately incorporated from filing, *see* Treas:Reg. § 1.6033–2(g)(5)(iv), example 6, the regulation violates equal protection principles as established by the due process clause of the fifth amendment. *See, e.g., Ducharme v. Merrill-National Laboratories,* 574 F.2d 1307, 1310 (5th Cir.) (per curiam), *cert. denied,* 439 U.S. 1002, 99 S.Ct. 612, 58 L.Ed.2d 677 (1978) (equal protection principles apply to United States through fifth amendment due process clause). The plaintiff contends that the Court must construe the regulation as exempting organizations such as the plaintiff in order to avoid this unconstitutional result.

The Supreme Court has recently re-emphasized the broad discretion Congress and the agencies have in formulating classifications for tax purposes, and has repeated the principle that such classifications can be invalidated only if they lack any conceivable rational basis. *Regan v. Taxation with Representation,* —— U.S. ——, 103 S.Ct. 1997, 2001–02, 76 L.Ed.2d 129 (1983).[6]

---

**5.** Section 6033(a)(2)(A)(iii) exempts from the filing requirement "the exclusively religious activities of any religious order."

**6.** The plaintiff, on the other hand, relies on *Larson v. Valente,* 456 U.S. 228, 102 S.Ct. 1673, 72 L.Ed.2d 33 (1982), an establishment clause case, which held that laws which favor certain religious denominations over others are subject

to strict scrutiny. 456 U.S. at 246, 102 S.Ct. at 1684. *Larson* involved a Minnesota statute that imposed registration and reporting requirements on charitable organizations. Originally, all religious organizations were exempt from the law, but in 1978 the Legislature amended the law to provide that only religious organizations which received less than 50 percent of their total contributions from nonmembers

Applying this standard, the Court finds that the challenged regulation does not violate the due process clause. The distinction between separately incorporated and nonseparately incorporated organizations—based on a difference in legal status—is a clear and appropriate dividing line. Church-affiliated organizations that are not separately incorporated from a church are regarded for tax purposes as part of the church itself. Treas.Reg. § 1.6033-2(g)(5)(iv) example 6; *see also St. Martin Evangelical Lutheran Church v. South Dakota,* 451 U.S. 772, 784, 101 S.Ct. 2142, 2149, 68 L.Ed.2d 612 (1980). Any other dividing line—such as one that turned on the closeness of the affiliation between a church and its related organizations—would present difficult administrative problems. In addition, Congress could have rationally concluded that there is a greater need to collect information from organizations that exist entirely separate from a church than from organizations that are a part of a church. Consequently, the distinction drawn is not impermissible.

### b. Establishment of religion.

The plaintiff's next constitutional attack is that the regulation as drafted favors those religions that do not separately incorporate their affiliated organizations over those that do in violation of the first amendment's establishment clause.

The Supreme Court has recently reiterated the principle that a law "does not violate the Establishment Clause merely because it 'happens to harmonize or coincide with the tenets of some or all religions.'" *Bob Jones University v. United States,* —

U.S. ——, 103 S.Ct. 2017, 2035 n. 30, 76 L.Ed.2d 157 (1983), *quoting McGowan v. Maryland,* 366 U.S. 420, 442, 81 S.Ct. 1101, 1113, 6 L.Ed.2d 393 (1961). Thus, while it is apparently true that the tenets of some religions permit them not to separately incorporate their auxiliaries while the tenets of other religions require separate incorporation, that fact alone does not invalidate the challenged regulation.

Rather, the regulation must be evaluated in terms of the familiar three-part test fashioned in *Lemon v. Kurtzman,* 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971). Under that test, a law does not violate the establishment clause if it has a secular legislative purpose, does not have the primary effect of either advancing or inhibiting religion, and does not foster an excessive governmental entanglement with religion. 403 U.S. at 612–13, 91 S.Ct. at 2111.

Treasury Regulation § 1.6033-2(g) satisfies each of these criteria. The legislative purpose of collecting information from charitable corporations, including church-affiliated organizations, is clearly a secular purpose. It is also a legitimate and important purpose particularly since many of these organizations, including the plaintiff, receive a substantial amount of federal, state, and county funds. The primary effect of the regulation neither advances nor inhibits any religion. It must be emphasized that section 6033 and its implementing regulations do not require any church-affiliated organization to pay a tax; they merely require such organizations to file informational tax returns. The burden of such a filing is minimal and does not inhibit

---

would remain exempt. Upon a challenge by the Unification Church, a religious organization that received more than 50 percent of its contributions from nonmembers, the amendment was held to be unconstitutional as applied to religious organizations because the state had shown no compelling interest in favoring some denominations over others. 456 U.S. at 255, 102 S.Ct. at 1688.

Strict scrutiny does not apply in this case because the regulation at issue does not draw distinctions among religious denominations. Rather, *all* "churches or conventions and associations of churches" are mandatorily exempt

from the filing requirement. 26 U.S.C. § 6033(a)(2)(A)(i). The regulation does draw lines between two types of integrated auxiliaries of churches—those that are separately incorporated and those that are not—but since integrated auxiliaries are not themselves churches, the regulation does not differentiate between denominations as did the law in *Larson.* Furthermore, as discussed in part C.3.b. *infra,* any incidental benefit to those religions whose tenets may permit them not to separately incorporate their integrated auxiliaries is too trivial to rise to the level of a constitutional violation.

those religions whose affiliated organizations are required to file, or materially advance those religions whose affiliated organizations are exempt from filing. Finally, the law does not give rise to an excessive governmental entanglement with religion. The statute and regulations do not require filing of informational tax returns by any church, but require such filings only by church-affiliated organizations having a separate legal existence from a church. While the plaintiff maintains that upholding the law will result in "continuing intimate surveillance" of church-affiliated organizations by the IRS, the Court sees no indication that the amount of governmental involvement exceeds permissible limits.

### c. Free exercise of religion.

█ Finally, the plaintiff argues that requiring it to file informational tax returns would interfere with its right to free exercise of religion. This argument is without merit. Any incidental burden on the plaintiff's free exercise of religion is minimal and is outweighed by the government's interest in collecting basic financial information on church-affiliated organizations, many of whom receive substantial amounts of public funds. In the analogous context of enforcement of IRS summonses, a long line of cases establishes that requiring churches to produce their records for tax purposes does not violate the first amendment. *E.g., United States v. Coates,* 692 F.2d 629, 633–34 (9th Cir.1982); *United States v. Grayson County State Bank,* 656 F.2d 1070, 1074–75 (5th Cir. 1981), *cert. denied,* 455 U.S. 920, 102 S.Ct. 1276, 71 L.Ed.2d 460 (1982); *United States v. Freedom Church,* 613 F.2d 316, 320 (1st Cir.1979). ·

In summary, the Court has determined that the plaintiff is not exempt from the requirement of filing an informational tax return under the definitions contained in Treasury Regulation § 1.6033–2(g). In addition, that regulation is neither inconsistent with the underlying statute, 26 U.S.C. § 6033, nor unconstitutional.

Accordingly, **IT IS ORDERED** that the plaintiff's motion for summary judgment is denied and the defendant's motion for summary judgment is granted.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**